# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 71 C 1403 | **DATE** | 8/24/2000 |
| **CASE TITLE** | Green vs. Peters et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/27/2000 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 87-1) to lift the stay is hereby granted, and Defendants' motion (Doc 86-1) to strike is denied. All other pending motions are presently moot. All discovery to be completed by September 27, 2000.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 2 5 2000 | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | FD-7 FILED FOR DOCKETING | |
| | Copy to judge/magistrate judge. | 00 AUG 24 PM 3: 46 | |
| SCT | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ISAAC GREEN,                                      )| |
| )| |
| Plaintiff,                      ) | |
| ) | |
| and                                               ) | |
| ) | |
| GEORGE PETER, JR.,                                ) | |
| ) | |
| Intervenor-Plaintiff,           ) | |
| ) | |
| vs.                                               ) | Case No. 71 C 1403 |
| ) | |
| HOWARD A. PETERS III,                             ) | |
| JOSEPH CANNON, EUGENE                             ) | |
| BULDAK, MARY JURICH, and                          ) | |
| WARREN W. WOLS,                                   ) | |
| ) | |
| Defendants.                     ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are: 1) Defendant's Motion to Lift the Stay of December 5, 1997 ruling, or in the alternative, to Limit Evidence;[1] and 2) Defendants' Motion to Strike the Intervenor-Plaintiff's Request for Production of Documents Regarding

---

[1] We decline to rule on what are essentially motions-in-limine this far in advance of the hearing on the merits.

Dwayne Woodson. For the reasons set forth below, we grant Defendants' motion to lift the stay, and deny Defendants' motion to strike.

## BACKGROUND

This is the latest chapter of this case which was filed in 1971. Isaac Green ("Plaintiff")[2] originally filed this class action suit while he was an inmate confined to an Illinois correctional institution. Green alleged that various prison officials ("Defendants") violated his First Amendment rights by denying him access to assorted publications.[3] The court has issued several decrees during the pendency of the litigation, which remain in effect (cumulatively "the Decrees"), enjoining Defendants from restricting prisoners in the Illinois correctional institutes access to various published materials, both legal (the 1973 decree) and non-legal (the 1976 injunction).[4]

Following the entree of the Decrees, Congress passed the Prisoner Litigation Reform Act of 1995, 18 U.S.C. § 3626 ("the PLRA"). Section 3626(b)(2) of the PLRA provides that:

---

[2] Now deceased.

[3] Intervenor-Plaintiff George Peter, Jr. ("Intervenor-Plaintiff") thereafter joined in asserting these rights.

[4] A complete rendition of the facts is set forth in Green v. Peters, 71C1403, 1997 WL 769458 (N.D. Ill. Dec. 5, 1997).

- 2 -

> [i]n any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

Such a remedy, however, is not an absolute. 18 U.S.C. § 3626(b)(3) maintains that:

> [p]rospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

In May of 1997, Defendants filed a motion to readily terminate the Decrees pursuant to the PLRA, alleging that the Decrees did not comply with the strict requirements for prospective relief mandated by Section 3626 (b)(2). In response, Intervenor-Plaintiff challenged the provision's constitutionality. In an opinion dated December 5, 1997, this Court held that Section 3626(b)(2) was constitutional and further that the Decrees did not comply with the enumerated requirements . See Green v. Peter, 71C1403, 1997 WL 769458 (N.D. Ill. Dec. 5, 1997).

Plaintiff timely filed a motion to reconsider, alter, or amend the order pursuant to Fed. R. Civ. Proc. 59(e). On April 27, 1998, we granted the motion in part, and denied it in part. See Green v. Peter, 1998 WL 246487, *3 (N.D. Ill. April 27,

1998). Specifically, we found there was sufficient evidence from which Plaintiff could possibly demonstrate that an ongoing violation of the prisoners' First Amendment rights was being inflicted by Defendants as contemplated under Section 3626(b)(3). See id. Before imposing any form of modified injunctive relief under Section 3626(b)(3), however, we referred the case to the magistrate judge for an evidentiary hearing to develop a factual record of whether Illinois prisoners are subject to continuing and ongoing violations of their First Amendment rights. Id. The matter subsequently returned to this Court, and following some additional discovery, these motions followed.

## DISCUSSION

### I. Defendants' Motion to Lift Stay

In our April 27, 1998 Order and Opinion, we stated that based on Plaintiff's evidence "it would seem that a current and ongoing violation of the prisoners' First Amendment rights can be demonstrated." However, because Defendants failed to present a substantive argument addressing the nature of the violations, we declined Plaintiff's request to enter a <u>revised</u> injunction at that time. Thus, we stayed the effect of our December 5, 1997 Opinion and Order "to more fully develop a factual record as to whether there are 'continuing and ongoing violations of Illinois prisoners' First Amendment rights. . . After a more detailed record has been developed, and

both parties have presented their positions as to what prospective relief remains necessary. . . the Court will then rule upon the question of whether any prospective relief remains appropriate in this case." Green, 1998 WL 246487 at *2.

The parties then began discovery with its express purpose being an evidentiary hearing for determining whether there are continuing and ongoing violations of the First Amendment rights of prisoners incarcerated in the Illinois prison system, sufficient to warrant our issuing a revised injunction under Section 3626(b)(3). Defendants subsequently brought this motion to lift the stay of our December 5, 1997 opinion and order, again largely on a procedural basis.

In essence, Defendants accuse Plaintiff of using this action as a vehicle to conduct a fishing expedition into a host of irrelevant matters. Defendants assert that these new claims have not fulfilled the exhaustion requirement necessary under 42 U.S.C. § 1997e. Defendants next argue that Plaintiff lacks standing, and may not bring claims of other inmates that do not personally affect him.[5] In their reply brief, Defendants argue that the United States Supreme Court's recent ruling in Miller v.

---

[5] Defendants also contend that many of the complained of violations do not fall within the scope of the Decrees, or do not constituted constitutional deprivations. These arguments, however, directly affect the substantive issue of whether Defendants have violated, and continue to violate the First Amendment right of Illinois prisoners. It would be premature at this point to resolve the substantive underlying issues with Defendants' discovery and procedural issues still unresolved. Thus, to avoid unnecessary duplication, and to further purposes of judicial economy, we will defer ruling on them at this time, but will consider them, if presented at a later, more appropriate time.

French, 530 U.S. ___, 2000 WL 77572 (2000) requires that we lift the stay of our December 5th ruling. Because Miller is a reversal of the prevailing law in the Seventh Circuit, we will first address its ramifications, followed by Defendants' other arguments.

## A. Effect of Miller v. French

Defendants argue that the Supreme Court's June 2000 opinion in Miller v. French mandates that we immediately lift the stay. Section 3626(e)(2) of the PLRA provides that the filing of a Section 3626(b) motion to terminate prospective relief "shall operate as a stay" of the prospective relief until the District Court renders a final ruling on the motion. See 18 U.S.C. § 3626(e)(2). The movant need not move for a stay; the stay is mandatory and automatically goes into effect. See Miller, 2000 WL 775572 at *6. Thus, the filing of a "§ 3626(b) motion 'shall operate as a stay' until the court rules on the § 3626(b) motion. During that time, any attempt to enjoin the stay is irreconcilable with the plain language of the statute." Miller, 2000 WL 775572 at *8 (emphasis added).

Defendants argue that when we stayed the implementation of our December 5, 1997 Order (terminating prospective relief and holding 3626(b) constitutional) we effectively suspended the automatic stay provision of Section 3626(e)(2).

Consequently, Defendants argue that under Miller we acted improperly and we must lift our stay and permit the December 5, 1997 Order to take effect.

In Miller, after the State of Indiana filed a Section 3626(b) motion to terminate the prospective relief of an injunction similar to the Decrees at issue here, the prisoner class moved for injunctive relief enjoining the operation of the Section 3626(e)(2) automatic stay. See Miller, 2000 WL 775572 at * 4-5. The District Court enjoined the automatic stay under its equitable power, which was affirmed by the Seventh Circuit because the 3626(e)(2) as construed violated principles of separation of powers. See id. at *5.

The Supreme Court granted certiorari inter alia to determine whether Section 3626(e)(2) precludes federal courts from exercising their traditional equitable authority to enjoin the automatic stay provision. See id. The Court rejected the position that the equitable power of the federal courts permitted them to "stay the stay" because this interpretation would negate the plain language of the statute by changing into permissive the statute's compulsory triggering language. See id. at *7. In so doing, the Court reasoned that one of the PLRA's primary objectives was to curb the equitable discretion of district courts, as evidenced by Congress amending 3626(e) after its enactment to provide for interlocutory review of a district court's refusal to enter an automatic stay. See id. at *8. Hence, the Court held that Section

3626(e)(2) automatic stay provision was mandatory which precludes district courts from "staying the stay." Thus, the Court reversed the Seventh Circuit.[6]

We note that Section 3626(e)(2) imposes an automatic stay upon prospective relief "ending on the date the court enters a final order ruling on the motion." On December 5, 1997, we entered an Order upholding the constitutionality of the PLRA and concluded the Decrees did not comply with the requirements of the PLRA. However, we stayed the effects of our ruling, pending Plaintiff's likely appeal.

Our December 5th ruling, however, was not our last word on this matter. On April 27, 1998, we ruled that based on Plaintiff's evidence "it would seem that a current and ongoing violation of the prisoners' First Amendment rights can be demonstrated." Green, 1998 WL 246487 at *2. Instead, of entering a revised injunction at that time, we continued to stay the effect of our December 5, 1997 Opinion and Order "to more fully develop a factual record as to whether there are 'continuing and ongoing violations of Illinois prisoners' First Amendment rights." Thus, as of this writing, the Decrees remain in effect.

We believe that Miller compels us to reverse this situation and stay the effect of the Decrees effective immediately. As the Supreme Court made clear in Miller,

---

[6]The Court also deemed the statute to be constitutional.

the stay of the Decrees is automatic and overrides any traditional, equitable injunctive power of this Court.

Plaintiff argues that Defendants waived the stay. However, Plaintiff has not demonstrated that Defendants can waive an automatic stay. It is clear that by precluding Federal Courts from enjoining the automatic stay Congress intended that it go into effect unimpeded. We believe that absent an express intent of Congress permitting waiver, it necessarily follows that Congress would frown upon the parties agreeing to waive the automatic stay. Finding no support in the PLRA's legislative history for Plaintiff's argument, we find it unpersuasive. In addition, even if Defendants did in fact agree to waive the implementation of the automatic stay, given that the parties have not acted in consideration of the automatic stay of the Decrees, Plaintiff has not suffered any harm due to its mistaken belief that Defendants could waive the automatic stay. Thus, the waiver issue is moot.

Plaintiff's final argument is that <u>Miller</u> expressly left open whether the brief time limit set forth in the PLRA implicates due process concerns. See <u>Miller</u>, 2000 WL 775572 at *13. Plaintiff asserts that Defendants' waiver of the automatic stay provision was the sole reason that he agreed to put aside this due process constitutional challenge. However, Plaintiff is not barred from asserting that

challenge at this juncture, and given that <u>Miller</u> shows that the stay is automatic, we could not enjoin the compulsory stay of the Decrees in any event.

**B. Standing & Jurisdiction**

Defendants next argue that Plaintiff cannot prove he has suffered an injury in fact; meaning he has no standing to assert his claimed constitutional violations. Plaintiff argues that he is a proper party to seek enforcement of the Decrees under Federal Rule of Civil Procedure 71.

Rule 71 states that "[w]hen an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party..." The purpose of Rule 71 is to permit a nonparty to enforce an order made in his favor. See <u>Moore v. Tangipahoa Parish School Bd.</u>, 625 F.2d 33, 34 (5th Cir. 1980). In contrast, it is well settled that a plaintiff has no standing under Federal Rule of Civil Procedure 71, or otherwise, to enforce a consent decree that was not made in his favor. See <u>Lasky v. Quinlan</u>, 558 F.2d 1133, 1137 (2nd Cir. 1977); <u>Wang v. Gordon</u>, 715 F.2d 1187, 1190 (7th Cir. 1983).

The instant suit differs from the traditional standing analysis because Plaintiff is not initiating a suit for the first time. Rather, Plaintiff initially sought to defend the validity of the 1973 and 1976 Decrees, which went into effect when Plaintiff was not

a party to this action. Since that time, Plaintiff successfully moved to intervene. Because we granted Plaintiff's motion, he is the proper party in this action.

The sole issue before us is whether there is a current and ongoing violation of the rights of prisoners in the Illinois correctional system. This issue is an inherent part of every Section 3626(b) motion. Defendants fired the first shot in the latest installment of this action by filing a Section 3626(b) motion challenging the continued validity of the Decrees. The Decrees were enacted to ensure a minimum level of protection of the First Amendment rights of Illinois prisoners while in confinement. Plaintiff is currently confined in the Illinois prison system, and as such has certain First Amendment rights that are expressly protected by the Decrees. Further, the current phase of the litigation is to determine whether current and ongoing violations exist, which will undoubtedly affect the Plaintiff. It necessarily follows that he has a direct stake in the continued viability of the Decrees. Either way, we believe Plaintiff has standing to defend the necessity of the continued viability of the Decrees as the named party in the case.

### C. 42 U.S.C. § 1997(e)-Exhaustion of Remedies

Prior to the enactment of the PLRA in 1996, there existed no requirement that prisoners must exhaust their administrative remedies prior to filing suit concerning prison conditions. Rather, courts had the discretion to impose this requirement upon

prisoners if the court believed it "appropriate and in the interests of justice." 42 U.S.C. § 1997(e)(a)(1) (1994). With the passage of the PLRA, however, this discretion no longer exists.

The PLRA sets forth requirements with which District Courts must comply to properly enter prospective relief in civil cases concerning the condition of penal institutions. See Miller v. French, 2000 WL 77572 at *3. Specifically, the PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(a) (2000).

Defendants argue that Plaintiff is precluded by his failure to exhaust his administrative remedies prior to bringing this action. However, the current phase of the case is our determination of whether there are continuing and ongoing violations of the First Amendment rights of prisoners incarcerated in the Illinois prison system sufficient to warrant our issuing a revised injunction under Section 3626(b)(3). This analysis is an inherent part of our scrutiny of Defendants' Section 3626(b) motion. See 18 U.S.C. § 3626(b)(3) (provision explicitly states that prospective relief shall not terminate if there is a current and ongoing violation of the federal right). Thus, Plaintiff did not "bring" this action; he is defending it. Requiring the representative

prisoner to exhaust his administrative remedies prior to defending a 3626(b) motion would produce an absurd result that is not contemplated by the statute.[7] Consequently, we believe our ability to render a <u>complete</u> judgment on Defendants' motion, including the necessary analysis under 18 U.S.C. § 3626(b)(3), is not precluded by the fact that Plaintiff did not first exhaust his administrative remedies.

## II. Defendants' Motion to Strike

Defendant initially moved to strike the requests because they were served upon them two days after the discovery cut-off date of May 23, 2000. However, in their reply brief Defendants also challenged the relevance of the documents. To alleviate the prejudice to Plaintiff from Defendants' failure to comply with established procedural protocol; see <u>United States ex rel. Lash v. Cooper</u>, 952 F. Supp. 1245, 1253 (N.D. Ill. 1996) (reply briefs are improper means of rasing new arguments); <u>Doe v. Board of Education of Hononegah Commty. H.S. Dist. No. 207</u>, 833 F. Supp. 1366, 1380, FN. 14 (N.D. Ill. 1993) (Defendant could not raise argument in support of motion for first time in reply brief); <u>Finance Investment Co. v. Geberit AG</u>, 165 F.3d 526, 531 (7th Cir. 1998) (arguments raised for the first time in appellate reply brief are waived), we granted Intervenor-Plaintiff leave to file a sur-

---

[7]Along similar reasoning, Plaintiff has standing to argue his position on whether continuing violations exist.

reply to present their argument on this point of contention. We shall address each issue in turn.

**A. Relevant Facts**

Following an April 4, 2000 status hearing, we ordered that the intervener-plaintiff was limited to 15 declarations by inmates in support of its case. Defendants were then entitled to depose a maximum of five of the declarants. All discovery was to be completed by May 23, 2000.

In accordance with our April 4, 2000 Order, Defendants chose Dwayne Woodson ("Woodson") as one of their five deponents. The parties scheduled his deposition for May 11, 2000, less than two weeks prior to the discovery cut-off. Woodson is an inmate who was previously incarcerated at Pontiac Correctional Center from approximately March of 1989, until his transfer to Menard Correctional Center on February 23, 2000. Woodson claims that since October 1, 1999 he has been denied access to his legal materials that are kept outside of his cell. He also claims to have been denied access to the law library at Menard. In support of his claimed access-denial, Woodson claims he made repeated verbal and written requests to authorities in both facilities requesting access to his materials. All told, Woodson claims to have sent eleven written letters to various prison officials within the first three months of 2000.

Immediately following Woodson's deposition, in a letter dated May 11, 2000, Shelton Frey ("Frey"), legal counsel for the Illinois Department of Corrections ("IDOC"), stated that IDOC records indicated that Woodson submitted only one request to officials at Pontiac during the period at issue regarding his access to his legal materials. Frey also stated that IDOC records did not contain a similar request to officials at Menard.

Woodson's deposition was continued until May 23, 2000, at which time counsel for Defendants initially stated on the record that to the best of Defendants' knowledge, none of Woodson's requests to Menard officials were received by the addressees. Counsel later amended his statement to indicate the possibility that one request could have been received by a Menard official. On May 25, 2000, counsel for Intervenor-Plaintiff served discovery requests upon counsel for Defendants seeking all letters or documents written by Woodson to any official at Menard, or received by any official at Menard, after February 23, 2000.

**B. Discussion**

We had previously set May 23, 2000 for the close of fact discovery for this matter. We do not set these deadlines lightly, nor are we prone to granting indefinite amounts of extensions.

Defendants complain that Plaintiff propounded discovery requests upon them two days after the close of discovery. Plaintiff points out that the requests were necessitated by Defendants' actions during May involving the receipt of Mr. Woodson's requests to prison officials, culminating in Defense Counsel's conflicting statements during the deposition of Mr. Woodson on the day of the discovery cut-off.

The relevance of the discovery occurs because the precise dispute was injected into the case by the actions of Defendants' counsel. In his May 11th letter, Counsel stated that IDOC records indicated Woodson submitted only one request to officials at Pontiac, and no similar requests to officials at Menard. Then, on May 23rd counsel initially stated on the record that none of Woodson's requests to Menard officials were received by the addressees, but he later indicated it is possible that a Menard official could have received one request. Clearly, Defendants' counsel raised the issue through his denials and story-changing, creating relevance even if it had not previously existed. We believe that this discovery should be complete in light of the described developments and, accordingly, deny Defendants' motion to strike.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Lift the Stay is hereby granted, and Defendants' Motion to Strike is denied.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: August 24, 2000