# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 71 C 1403 | **DATE** | 6/27/2002 |
| **CASE TITLE** | | Green vs. Peters et al | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Intervenor-Plaintiff's motion (Doc 184-1) for an award of attorney's fees and expenses is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JUN 28 2002 | | |
| ✓ | Docketing to mail notices. | | date docketed | | 194 |
| | Mail AO 450 form. | | CDY | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| SCT | courtroom deputy's initials | U.S. DISTRICT COURT CLERK | date mailed notice | | |
| | | 02 JUN 27 AM 8: 52 | | | |
| | | FILED-EDIO | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

ISSAC GREEN,                                )
                                            )
                    Plaintiff,              )
                                            )
        and                                 )
                                            )
GEORGE PETER, JR.,                          )
                                            )
                    Intervenor-Plaintiff,   )
                                            )        71 C 1403
        vs.                                 )
                                            )
HOWARD A. PETERS III,                       )
JOSEPH CANNON EUGENE BULDAK,                )
MARY JURICH and WARREN W. WOLS,             )
                                            )
                    Defendants.             )

**DOCKETED**

*JUN 2 8 2002*

## MEMORANDUM OPINION

Before the court is Intervenor-Plaintiff George Peter, Jr. ("Intervenor-Plaintiff")'s

motion for an award of attorney's fees and expenses. For the reasons set forth below,

the motion is denied.

## BACKGROUND

Rather than repeat this thirty-year old case's entire, lengthy history, much of

which is not relevant to the instant motion, this opinion assumes familiarity with the

case and provides only a brief summary of some of the events leading up to this motion.

In 1971, Isaac Green ("Green") originally filed this lawsuit while he was an inmate

confined to an Illinois correctional institution. Green alleged that various prison officials ("Defendants") violated his First Amendment rights by denying him access to various publications. Following a denial of cross-motions for summary judgment, the parties adopted a consent decree ("the 1973 Decree") that prohibited Defendants from restricting the inmates' access to certain non-legal publications. In 1975, after a trial, Judge McGarr of this court found that Defendants' "publishers only" rule violated the 1973 Consent Decree. Consequently, Judge McGarr issued a permanent injunction in January 1976 ("the 1976 Injunction").

There were no disputes in this case until 1987 when Defendants adopted a "No Catalogs Rule." Intervenor-Plaintiff complained to this court that this rule violated the 1976 Injunction. On July 23, 1992, Intervenor-Plaintiff was granted leave to intervene in this case in order to petition for a rule to show cause why the court should not issue an order directing Defendants to discontinue their ban on catalogs. In an opinion dated October 21, 1992, this court agreed with Intervenor-Plaintiff that the "No Catalogs Rule" violated the 1976 Injunction. An Agreed Order was subsequently entered on December 23, 1992 requiring that the No Catalogs Rule be rescinded within thirty days. Intervenor-Plaintiff filed several motions to enforce the Agreed Order during 1993, alleging that Defendants were not in compliance with the court's decisions. On April 27, 1993, the court entered an implementation order setting forth recommended language for the rules governing the disputed inmate reading material. Intervenor-Plaintiff later brought to this court's attention that some of the wardens had not followed

this court's previous instructions, and this court issued a minute order on June 14, 1993 addressing this noncompliance. The 1973 Consent Decree, the 1976 Injunction, and the 1992 Agreed Order have been collectively referred to as "the Decrees" in this case, and we will refer to them as such here. By agreement with Defendants, Intervenor-Plaintiff received attorney's fees for his efforts in 1992 and 1993.

On May 14, 1997, Defendants moved to terminate the prospective relief in this case pursuant to the termination provisions of the Prison Litigation Reform Act, 18 U.S.C. § 3626(b)(2). Defendants argued that the Decrees were overbroad and thus violated the statute. Intervenor-Plaintiff objected to the termination on the grounds that the termination provision of the Prison Litigation Reform Act ("PLRA") was unconstitutional. On December 5, 1997, this court held that the termination provision was constitutional and that the Decrees should be terminated, but stayed the effect of this ruling pending an appeal.

That appeal, however, was never filed. Instead, Intervenor-Plaintiff moved this court to reconsider its decision. Intervenor-Plaintiff argued that there was evidence that inmates' First Amendment rights were being violated. Under section 3626(b)(3) of the PLRA, prospective relief will not be terminated if a current and ongoing violation of a constitutional right is proven and such relief is necessary to cure that violation. 18 U.S.C. § 3626(b)(3). Any such relief must be narrowly drawn and must be the least intrusive means of correcting the violation. Id. Due to the factual underdevelopment of the case, this court concluded that a revised injunction could not be issued at that

time. Instead, this court concluded that an evidentiary hearing would be necessary to determine whether Intervenor-Plaintiff could prove that injunctive relief was necessary to correct a current and ongoing violation of Illinois' inmates First Amendment rights.

This hearing was initially to be held by the Magistrate Judge assigned to the case but was ultimately held before this court in November 2001. After considering all the evidence presented at that evidentiary hearing, this court concluded that Intervenor-Plaintiff had failed to prove a current and ongoing violation of Illinois inmates' First Amendment rights. See Memorandum Opinion, January 10, 2001. Accordingly, the Decrees were terminated pursuant to the PLRA's termination provision.

Intervenor-Plaintiff now seeks fees and expenses for work in connection with his opposition to Defendant's motion to terminate the Decrees. Intervenor-Plaintiff does not specifically set forth the exact work he seeks compensation for, but generally states that he seeks fees for work beginning April 1997 and ending November 2001. Because Intervenor-Plaintiff failed to prove a current and ongoing constitutional violation necessitating continuation of relief in this case, this court questioned whether Intervenor-Plaintiff was a "prevailing party" eligible to recover fees and expenses. This court asked the parties to address only this threshold issue in their papers. With this background, the court now turns to the issue at hand: whether Intervenor-Plaintiff is a "prevailing party" eligible for an award of fees and expenses.

## DISCUSSION

Intervenor-Plaintiff seeks fees under The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 ("section 1988") and expenses under Federal Rule of Civil Procedure 54(d) ("Rule 54(d)"). Section 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Recovery of attorney's fees by Intervenor-Plaintiff thus depends, in the first instance, on whether Intervenor-Plaintiff qualifies as a "prevailing party" within the language of section 1988; "no fee award is permissible until the plaintiff has crossed the 'statutory threshold' of prevailing party status." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989). Intervenor-Plaintiff must also be a prevailing party to recover costs under Rule 54(d). Fed.R. Civ.Pro 54(d).

The success that qualifies a plaintiff as a "prevailing party" under section 1988 must include the obtaining of at least some relief, or the establishment of entitlement to relief, on the merits of a legal claim. Hewitt v. Helms, 107 S.Ct. 2672 (1987); Garland, 489 U.S. at 792. Parties have "prevailed" "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the action." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Put another way, a party "prevails" when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that *directly benefits the plaintiff.*" Farrar v. Hobby, 506 U.S. 103, 111-12 (1992) (emphasis

added).  Furthermore, "'liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant.'" Leffler v. Meer, 60 F.3d 369 (7th Cir. Ind. 1995) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)); Nat'l Private Truck Council, Inc. v. Oklahoma Tax Commission, 515 U.S. 582 (holding that "when no relief can be awarded pursuant to § 1983, no attorney's fees can be awarded under § 1988).

Applying these legal principles to Intervenor-Plaintiff's motion, Intervenor-Plaintiff's complete failure of proof during the evidentiary hearing as to whether there is a current and ongoing violation of Illinois inmates' First Amendment right of access to publications necessitating prospective relief presents a seemingly insurmountable obstacle to Intervenor-Plaintiff being deemed a "prevailing party."  Apparently recognizing that he cannot base his assertion that he is a "prevailing party" on his failure to overcome Defendants' motion to terminate the Decrees, Intervenor-Plaintiff does not attempt to do so.  Rather, Intevenor-Plaintiff argues that he obtained prevailing party status by way of his activities in 1992 and 1993 and that he, in turn, retained such prevailing party status throughout his opposition to Defendants' motion to terminate the Decrees.

Before addressing Intervenor-Plaintiff's argument in favor of a fee award, the court addresses, as a preliminary matter, Defendants' challenge to Intervenor-Plaintiff's motion based on his status as an intervenor.  Defendants argue that, unlike many of the

cases he relies upon, Intervenor-Plaintiff was not the same individual who originally obtained the decrees and, therefore, is not the "prevailing party" in this case. We reject the contention that only the original plaintiff in a case can constitute a "prevailing party" for the purpose of awarding fees. Intervenor-Plaintiff's status as intervenor does not by itself preclude him from being deemed a prevailing party. Shaw v. Hunt, 154 F.3d 161, 165 (4th Cir. 1998) (stating plaintiff-intervenors can be found to be "prevailing parties" for fee purposes); Wilder v. Bernstein, 965 F.2d 1196, 1202 (2nd Cir. 1992). An intervenor is entitled to attorneys' fees under section 1988 where the intervenor has substantially contributed to the ultimate success of the case so as to be a "prevailing party." Gautreax v. Chicago Housing Auth., 610 F. Supp. 29, 30-31 (N.D. Ill. 1985) (awarding intervenor-plaintiff attorneys' fees where intervenor-plaintiff had prevailed in enforcing consent decree); Frere v. Lee, 2000 WL 64297, at *3 (E.D. La. 2000); U.S. v. Board of Ed. of Waterbury Conn., 605 F.2d 573 (C.A.Conn. 1979) (intervenors who successfully advanced a remedial plan in school desegregation case held prevailing parties); Wilder, 965 F.2d at 1204.

That intervenors may be eligible for fee awards under section 1988 does not mean Intervenor-Plaintiff is a prevailing party entitled to recover fees for his efforts to combat Defendants' motion to terminate. Rather, the court must determine whether Intervenor-Plaintiff played a sufficiently significant role in the success of this litigation to achieve the status of a prevailing party. See Gautreaux. Because Intervenor-Plaintiff was not involved in this case when the original plaintiff obtained the 1973 Decree or the

1976 Injunction, he cannot latch on to the original plaintiff's success. Nor does he attempt to do so.

Instead, Intervenor-Plaintiff argues that he achieved "prevailing party" status in this case based on his efforts in 1992 and 1993. Defendants do not dispute that in 1992 and 1993 Intervenor-Plaintiff succeeded in obtaining discrete orders interpreting the scope of the 1976 Injunction. They do, however, contend that these successes have not granted Intervenor-Plaintiff "prevailing party" status because this court never expressly found any constitutional violations in connection with these orders. Recognizing that under section 1988 we must interpret "prevailing party" broadly and recognizing further that Intervenor-Plaintiff's efforts were instrumental in enforcing the decree, we find that Intervenor-Plaintiff may be deemed a prevailing party for those efforts. Del. Valley, 478 U.S. at 546 (instructing that plaintiff is "prevailing party" when he succeeds in monitoring and enforcing consent decree). Indeed, Intervenor-Plaintiff received attorney's fees from Defendants for that specific work in 1993. Therefore, the court finds that Intervenor-Plaintiff did achieve "prevailing party" status for his efforts in 1992 and 1993.

But should Intervenor-Plaintiff's limited successes in 1992 and 1993 grant him prevailing party status even for his unsuccessful efforts in opposing Defendants' 1997 motion to terminate the Decrees? Intervenor-Plaintiff argues that his earlier successes carry over into his later efforts in this case. Intervenor-Plaintiff rests his argument on certain cases where courts extended prevailing party status to award fees under section

1988 to plaintiffs for post-judgment work, even though such plaintiffs technically did not prevail on the particular motion or work constituting the subject of the fee petition. See, e.g., Alliance To End Repression v. City of Chicago, Nos. 74 C 3268 & 75 C 3295, Northern District of Illinois (J. Gottscall, Order dated Mar. 29, 2002); Plyler v. Evatt, 902 F.2d 273, 280 (4th Cir. 1990); Jenkins v. Missouri, 127 F.3d 709, 717-18 (8th Cir. 1997). These cases and others addressing fee petitions regarding unsuccessful post-judgment or post-consent decree litigation do not, as Intervenor-Plaintiff may wish us to conclude, instruct that plaintiffs automatically retain their prevailing party status regardless of whether they succeed in future efforts. Rather, this case law sets forth an analytical framework for courts to apply in determining whether a plaintiff maintains initial prevailing party status for unsuccessful post-judgment or post-consent decree litigation.

In deciding whether a plaintiff is still a "prevailing party" in his unsuccessful post consent decree litigation efforts, "the question is whether the nature of the post-decree litigation warrants a separate analysis of the otherwise established 'prevailing party' status." Plyler, 902 F.2d at 280. The threshold question is similar to the analysis espoused in Hensley regarding whether a plaintiff who has won as to some of his claims may be awarded fees for work related to his unsuccessful claims; that is, is the unsuccessful legal work related to the litigation that made plaintiffs prevailing parties? Alliance, at p. 6. (quoting Hensley, 461 U.S. at 440). In the specific context of unsuccessful post-decree litigation proceedings, courts ask "'whether the issues in the

post-judgment litigation are inextricably intertwined with those on which the plaintiff prevailed in the underlying suit or whether they are distinct.'" Id. (quoting Jenkins, 127 F.3d at 717).

To be related, the issues raised by both the successful proceedings and in the unsuccessful proceedings "must 'involve the same common core of facts or related legal theories.'" Id. (quoting Plyler, 902 F.2d at 280). Unsuccessful post-decree proceedings that involve claims and issues that are "distinctly different" from the successful litigation are unrelated to that litigation. "If treatment as a separate lawsuit is appropriate, then a party who may have 'crossed the threshold' to become the 'prevailing party' in the main action would in essence lose that status with respect to the separate claims or proceedings." Plyler, 902 F.2d at 280. "Ultimately, determinations of relatedness of claims and the quality of the overall results are not reached through application of any precise rules or formulae, but rather through an equitable judgment of the district court exercising discretion in light of the concerns expressed in Hensley." Plyler, 902 F.2d at 280.

Although the Seventh Circuit has not specifically addressed the issue of relatedness in the context of unsuccessful post-decree litigation, it has provided relevant instruction as to relatedness in the context of successful and unsuccessful claims in the same case. Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1279 (7th Cir. 1983). There, the Seventh Circuit explained that a "useful tool" for making a determination as to wether an unsuccessful claim is related to a successful claim is "to focus on whether

the claims seek relief for essentially the same course of conduct." Mary Beth G., 723

F.2d at 1279. "An unsuccessful claim will be unrelated to a successful claim when the

relief sought on the unsuccessful claim is intended to remedy a course of conduct

entirely distinct and separate from the course of conduct that give rise to the injury on

which the relief granted is premised." Id. Finally, given Intervenor-Plaintiff's status

as an intervenor, we keep in mind that an intervenor cannot obtain a fee award unless

the intervenor has substantially contributed to the ultimate success of the case.

Gatreaux, 610 F. Supp. at 31.

Applying these principles to this case, we conclude that the nature of Defendant's

motion to terminate and the litigation related to that motion warrants a separate analysis

of Intervenor-Plaintiff's prevailing party status for his work in 1992 and 1993. The

facts and the law applied in connection with Defendants' motion to terminate the

Decrees are materially different from the underlying litigation and from Intervenor-

Plaintiff's efforts in the early 1990s. It would be to blink reality to continue prevailing

party status from those limited successes. Arvinger v. Mayor and City Council of

Baltimore, 31 F.3d 196 (4th Cir. 1994); see Willie M. v. Hunt, 732 F.2d 383, 386 (4th

Cir. 1984); Rolland v. Celluci, 151 F. Supp. 2d 145, 154 (D. Mass. 2001).

One difference that has particular significance is the application of the PLRA to

this case. As noted in our written opinion terminating the Decrees, the PLRA changed

the legal landscape against which alleged violations of prisoners' rights are assessed.

More specifically, the PLRA substantially limits courts' supervision over prisons by

imposing significant restrictions on both granting and maintaining prospective relief. 18 U.S.C. § 3626; Gilmore v. People of the State of California, 220 F.3d 987, 991 (9th Cir. 2000). The PLRA thus disfavors consent decrees. Laaman v. Warden, New Hampshire State Prison, 238 F.3d 14, 16 at n.1 (1st Cir. 2001) (stating PLRA sought to serve as "last rite" for many consent decrees"). This case was inserted into the new legal context created by the PLRA upon the PLRA's enactment and Defendants' motion to terminate.

Defendants moved under section 3626(b)(2) for the termination of the Decrees, arguing that the Decrees did not meet the strict requirements of that provision. This court agreed with Defendants that the Decrees did not comply with the standards for prospective relief in the PLRA. Intervenor-Plaintiff, however, argued to this court that prospective relief in some modified or new form was still necessary because there were current and ongoing violations of Illinois prisoners' First Amendment right of access to publications. Pursuant to section 3626(b)(3), we permitted Intervenor-Plaintiff an evidentiary hearing during which he was given the opportunity to prove a current and ongoing violation necessitating prospective relief. Therefore, the legal analysis applicable to this case from the time Defendants' filed their motion to terminate is entirely different from that applied to the original plaintiff's allegations and Intervenor-Plaintiff's 1992 and 1993 complaints. Additionally, the facts relief on by the Intervenor-Plaintiff at the hearing and the policies and procedures being challenged had not been previously litigated.

For all practical purposes, the hearing was about a new and original lawsuit. Even with respect to the First Amendment analysis, some of the applicable standards have changed since the inception of this case. For instance, although Judge McGarr had held that Defendants' "publishers' only rule" violated the First Amendment, the United States Supreme Court has since held that such rules in prisons do not violated the United States Constitution. Bell v. Wolfish, 441 U.S. 520 (1979).

Much of Intervenor-Plaintiff's argument that Illinois inmates' First Amendment rights were being violated was based on Defendants' implementation of a new storage box policy in the late 1990's. Intervenor-Plaintiff also based his position on Defendants' restrictions on audiocassettes, posters, maps, and stricter restrictions at the Tamms super-maximum security prison. None of these facts formed the factual basis of the Decrees in this case. The considerations related to super-maximum prison facilities were particularly new and unique to the litigation related to Defendants motion to terminate. Moreover, all of these new facts had to be considered in light of the similarly new challenges to the Illinois prison systems as a whole, one of which includes an increase in population from 6500 in the 1970's to 45,000 in 2001.

Thus, the operative facts and legal standards at issue in connection with Defendants' motion to terminate differed from those considered earlier in the long history of this case. The PLRA placed this case into a new legal landscape. The facts forming the basis of Intervenor-Plaintiff's allegations of current and ongoing violations presented a new course of conduct that would have been the basis for any finding of

liability; a course of conduct different than the one that formed the basis of the Decrees. Mary Beth G., 723 F.2d at 1279. Accordingly, we find that the nature of the litigation related to Defendants' motion to terminate the Decrees is so decidedly different in nature that that litigation must be viewed as a separate proceeding for the purposes of determining whether Intervenor-Plaintiff was a "prevailing party."

Having concluded that Intervenor-Plaintiff's prior successes do not carry over into his work related to Defendants' motion to terminate the Decrees, we must conclude that Intervenor-Plaintiff is not a "prevailing party" entitled to fees. Intervenor-Plaintiff's efforts from April 1997 through the evidentiary hearing did not substantially contribute to any success in this case. Once this court had concluded that the Decrees violated the PLRA, the Decrees had to be terminated. And although this court afforded Intervenor-Plaintiff the opportunity to modify the Decrees or somehow fashion some other prospective relief, Intervenor-Plaintiff failed to prove any current and ongoing constitutional violation. Without a violation, no relief can be ordered. Thus, the relief obtained by the original plaintiff was irrelevant to the instant proceedings and cannot operate to transform a loss at trial to a win. Intervenor-Plaintiff's efforts did not contribute to any success in the overall litigation or altered the parties' relationship in a way that benefitted the plaintiff. See, e.g., Hensley, 461 U.S. at 433; Wilson v. Mayor & Bd. of Alderman of St. Francisville, LA, 135 F.3d 996, 999 (5th Cir. 1998) (party opposing modification to consent decree not prevailing party where its opposition did not cause material change in legal relationship of the parties to his benefit).

Finally, the cases Intervenor-Plaintiff cites in support of his position do not persuade us to come to a different conclusion. We note that the "prevailing party" status we have afforded Intervenor-Plaintiff for his efforts in 1992 and 1993 is more tenuous than that of the plaintiffs in the cases he cites in support of his position. In those cases, the parties claiming "prevailing party" status were the parties that obtained the decrees in the first instance. Del. Valley, 478 U.S. at 546; Balark v. City of Chicago, 81 F.3d 658 (7th Cir. 1996); Alliance; Plyler, 902 F.2d 273 (4th Cir. 1990); Jenkins, 127 F.3d at 709. Intervenor-Plaintiff, however, came into the case nearly two decades after it was initiated and for the limited purposes explained above.

In addition, none of the cases cited by Intervenor-Plaintiff involved the PLRA or any similarly broad-sweeping legislation placing the post-decree litigation at issue in an entirely different legal context. In contrast to those cases, in which the post-decree litigation involved modification and enforcement efforts of existing consent decrees, see, e.g., Alliance, Intervenor-Plaintiff was seeking new relief under the PLRA based on new allegations. The prior successes enjoyed by the original plaintiff and Intervenor-Plaintiff in this case do not overcome the outcome: all relief was lost.

Furthermore, contrary to Intervenor-Plaintiff's contention, Balark v. City of Chicago, 81 F.3d 658 (7th Cir. 1996), does not mandate a different result. In Balark, the judgment conferring plaintiffs' desired relief – a consent decree – was ultimately vacated. After the judgment was vacated, the plaintiffs sought fees for their efforts in obtaining and enforcing the consent decree. They had not previously requested fees for those efforts. The Seventh Circuit awarded them fees for those successful efforts

because the court concluded that vacating the judgment did not eradicate their earlier success. Id. The court emphasized that "both plaintiffs make clear in their briefs in this Court that the fee request pertains *only* to time spent prior to when the consent decree was entered and perhaps some limited time spent monitoring the decree during its existence." Id. at 665 (emphasis added). The court noted that plaintiffs may well have been awarded fees if they sought them after the entry of the consent decree and that the mere fact that the decree had been vacated did not change their eligibility for fees as a matter of law; plaintiffs were still entitled to "the fees that *relate to their success in obtaining* a ten-year consent decree." Id. (emphasis added). It does not appear from the opinion that the Balark plaintiffs sought fees for their *un*successful efforts opposing the motion to vacate. Here, unlike in Balark, Intervenor-Plaintiff seeks fees for his *un*successful efforts – an entirely different analysis. Accordingly, we are not persuaded that Balark demands a different conclusion from the one we have reached.

Similarly, in Jenkins, the defendants argued that the plaintiffs should not be awarded fees because a judgment in their favor had been reversed on appeal. Jenkins, 127 F.3d at 709. The Eighth Circuit disagreed. The court concluded that the reversal did not affect the district court's underlying holding that the state had committed constitutional violations that it was obligated to remedy. The court found that the decision did not "retroactively take away the Jenkins class's status as a prevailing party." Id. at 714. Thus, even after the plaintiffs' "loss", i.e., the reversal, there was still a constitutional violation requiring the decree. For this reason, the plaintiffs were still successful in their overall efforts. Here, after an eight-day evidentiary hearing,

Intervenor-Plaintiff failed to prove a current or ongoing violation of Illinois inmates' First Amendment right of access to publications. Neither the Decrees nor any other form of prospective relief was necessary or proper. Therefore, Intervenor-Plaintiff, unlike the Jenkins plaintiffs, was wholly unsuccessful.

In sum, Intervenor-Plaintiff failed in his opposition to Defendants' motion to terminate the Decrees. Intervenor-Plaintiff has also failed to persuade this court that either the original plaintiff's or his own limited successes in this case confer "prevailing party" status upon him. The trial involved evidence and law not previously considered and the presentation of facts was untethered to prior proceedings. Accordingly, using the separate fee analysis appropriate to this case, we conclude that Intervenor-Plaintiff is not a "prevailing party" for the purposes of a fee award under either section 1988 or Rule 54(d).

Even if we had found that Intervenor-Plaintiff was a "prevailing party" with regard to his efforts from 1997 through the end of the evidentiary hearing in this case, we would not award him fees. Defendants argue, and we agree, that the PLRA limits the recovery of attorney's fees to cases where an actual violation of prisoners' constitutional rights is proven. "'Congress enacted [the] PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims.'" Waterman v. Farmer, 84 F. Supp.2d 579, 585 (D. N.J. 2000) (finding that plaintiffs were not eligible for fees even though they played a significant role in relief because there was no determination of an actual violation of plaintiff's rights). "To that end, [Congress] created a system of 'monetary and

procedural disincentives to the filing of meritless cases.'" Id. (citing Christiansen v. Clarke, 147 F.3d 655, 658 (8th Cir. 1998)). Among other such disincentives, the PLRA modifies the application of section 1988 to prisoner civil rights suits and provides strict limitations on both the availability and the amount of fee awards. 42 U.S.C. § 1997e(d). With respect to Intervenor-Plaintiff's fee request, the PLRA states in the relevant part:

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that –
> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statue pursuant to which a fee may be awarded under section 1988 of this title....

42 U.S.C. § 1997e(d)(1)(A). A plain reading of this language makes clear that the PLRA conditions an award of attorney's fees in prisoner civil rights cases on a determination that the prisoner's rights have actually been violated. See Waterman, at 586.

Intervenor-Plaintiff argues that Webb v. Ada Cnty., 285 F.3d 829 (9th Cir. 2002) stands for the proposition that attorneys may be awarded fees under the PLRA even though there is no showing of a violation of a prisoner's constitutional rights. We disagree with Intervenor-Plaintiff's interpretation of Webb and its application to this case. In Webb, the Ninth Circuit affirmed a district court's award of attorney's fees to plaintiffs for their *successful* post-judgment efforts to enforce a consent decree issued to correct violations of prisoner constitutional rights. Defendants had moved to terminate the consent decree. The district court denied the motion, finding the decrees

were still necessary to prove current and ongoing constitutional violations. The district court also concluded that the consent decree met the PLRA's strict requirements. On appeal, Defendants argued that plaintiffs were not entitled to fees because their post-judgment efforts were not incurred in connection with proving a constitutional violation, as required by section 1997e(d)(1). In rejecting Defendants' argument, the court reasoned that while plaintiffs were not engaged in proving such a violation during their post-judgment work, plaintiffs were attempting to enforce a consent decree the district court found necessary to correct violations of the prisoner's rights. Fees for such work are expressly provided for in section 1997e(d)(1)(B)(ii), which permits compensation for fees incurred in enforcing judicial relief provided to remedy a constitutional violation.

Here, by contrast, Intervenor-Plaintiff's efforts cannot be viewed as enforcing the Decrees because this court had already deemed the existing Decrees as violative of the PRLA. In an effort to circumvent this obstacle, Intervenor-Plaintiff attempted to prove that some modified form of the Decrees or some entirely new prospective relief was necessary. Yet there was a final determination that there was no constitutional violation that could form the basis of any relief. Even if Intervenor-Plaintiff's efforts were deemed to be action taken to enforce the Decrees, Intervenor-Plaintiff was, unlike the Webb plaintiffs, *un*successful because all relief was terminated.

Finally, relying on Martin v. Hadix, 527 U.S. 343 (1999), Intervenor-Plaintiff argues that the fee limitation provision in the PLRA does not apply to pending cases. We do not think that Hadix renders the PLRA's fee limitation provision inapplicable

to this case. The issue before the Court in <u>Hadix</u> was whether the attorneys' fees incurred in monitoring consent decrees issued to correct violations of prisoners' constitutional rights should be reduced pursuant to the PLRA's fee limitation provision. 42 U.S.C. § 1997e(d)(1). The Court concluded that the PLRA's fee restrictions could apply to post-enactment but not to pre-enactment attorney work. <u>Hadix</u>, 527 U.S. at 343; <u>see</u> <u>Rodriguez v. Zavaras</u>, 22 F. Supp.2d 1196 (D. Colo. 1998) (holding PLRA fee limitations apply prospectively to fees incurred after PLRA effective date of April 26, 1996). All the work for which Intervenor-Plaintiff seeks compensation occurred *after* the PLRA's enactment. Therefore, the PLRA's fee limitation provisions do apply here. The fact that this case originated prior to the PLRA's enactment does not change that conclusion; the case in <u>Hadix</u> had also been initiated prior to the PLRA's enactment.

## CONCLUSION

For the foregoing reasons, Intervenor-Plaintiff's motion for an award of attorney's fees and expenses is denied.

Charles P. Kocoras
United States District Judge

Dated: <u>June 27, 2002</u>